**Clarence BROYLE**

v.

**EAGLE PICHER INDUSTRIES, et al.**

**Civ. A. No. 87–884–B.**

United States District Court,
M.D. Louisiana.

Nov. 22, 1988.

George R. Covert, Covert and Braud, Baton Rouge, La., for plaintiff Broyle.

Michael T. Cali, Francis B. Mulhall, John Hainkel, Lemle, Kelleher, Kohlmeyer, Dennery, et al., New Orleans, La., for Owens Illinois, Inc.

Thomas M. Bergstedt, Scofield, Bergstedt, Gerard, Mount & Veron Lake Charles, La., for Keen Corp., Rockwool Mfg. Co., Owen–Corning Fiberglass Corp., Pittsburgh Corning Corp., and GAF Corp.

Vance E. Ellefson, T/A Anthony J. Staines, Metairie, La., for Eagle Picher Industries.

POLOZOLA, District Judge.

Clarence Broyle filed this suit seeking damages for personal injuries allegedly resulting from the plaintiff's exposure to asbestos containing products manufactured by the defendants. On January 18, 1988, Clarence Broyle died and was buried without an autopsy being performed to determine the cause of his death. The defendants filed a motion seeking an order from the court which would require the surviving spouse to be substituted as plaintiff in this matter. The defendants further request an order requiring the surviving spouse to produce the remains of the deceased plaintiff for a full and complete autopsy to be performed by the appropriate officials of the office of the Coroner of East Baton Rouge Parish, Louisiana.

■ The defendants' motion to substitute Evelyn Lou Broyle, the surviving spouse of Clarence Broyle, as a party plaintiff in this case is hereby granted. It is clear that pursuant to provisions of Rule 25 of the Federal Rules of Civil Procedure, a court may order substitution of the appropriate party as plaintiff in lieu of the deceased party. Under article 2315.1(A)(1) of the Louisiana Civil Code, the surviving spouse is the appropriate party to be sub-

stituted as a party plaintiff in this case. Therefore, the motion of the defendants to substitute Evelyn Lou Broyle as the proper plaintiff in this case is hereby granted.

■ The defendants seek an order from the Court requiring that the decedent's body be exhumed in order for an autopsy to be performed for the purpose of determining the exact cause of death. The Court appointed Dr. Ronald A. Radzikowski & Medical Associates as the Court's expert pursuant to Rule 706 of the Federal Rules of Evidence to determine the following:

1. Assuming the decedent's body was properly embalmed, for what period of time would an autopsy reasonably be expected to provide medically significant data with respect to:

    (a) Cause of Death;

    (b) The decedent's medical condition at the time of death;

    (c) The factors which contributed causally to the decedent's death;

    (d) The decedent's lung condition; and

    (e) Whether any pulmonary condition was a causal factor in the decedent's death.

2. In your opinion, would pathological/histological examination of body tissues constitute the medically most definitive method for determining the existence, severity, and etiology of pneumoconiosis?

3. In your opinion, would an autopsy constitute the medically most definitive method for determining the precise nature of the cardiac event suffered by the decedent?

    (a) In the absence of an autopsy, is it possible to determine whether the decedent suffered a left-sided heart failure, a right-sided heart failure, and embolism, a myocardial infarction or other cardiac event?

4. In your opinion, considering the information contained in the medical records you have reviewed is an autopsy the most medically reasonable method for determining:

    (a) The decedent' physical condition at the time of death;

    (b) The precise cause of the decedent's death;

    (c) What factors contributed causally to the decedent's death;

    (d) Whether the decedent in fact suffered from an asbestos-related pneumoconiosis;

    (e) The extent of which, if any, a pulmonary condition contributed causally to the decedent's death.

5. What is the scope of the autopsy that would be required to determine, with specificity, the precise cause of the decedent's death, the nature and etiology of the cardiac event suffered by the decedent i.e. the existence, extent, and etiology of any pulmonary condition, and the extent to which, if any, any pulmonary condition contributed causally to the decedent's death.

On February 24, 1988, Dr. James S. Osterberger, Jr., a member of the Medical Associates Group, submitted a written report to the Court in response to the Court's order. Dr. Osterberger concluded that in his opinion "no meaningful information could be added to that contained within these records by a performance of an autopsy on the exhumed body of Clarence Broyle." Dr. Osterberger further concluded that he did "not feel it necessary to perform such an autopsy" because "an autopsy would reveal no additional information that would be useful in establishing cause of death, the diagnosis of asbestosis or the extent of the asbestosis beyond what is already known from the medical records."

Therefore, the Court finds that defendant's motion for an autopsy is DENIED.